THE MORRIS AND ESSEX RAILROAD COMPANY ADS. AR-THUR HASLAN AND OTHERS, ADMINISTRATORS OF RICHARD PAXTON, DECEASED.

A person driving a heavy team, on a foggy morning, over a railroad, without waiting to ascertain whether an approaching train was near, having been struck by the engine and killed—*held*, to have contributed to the act by his own negligence, so that his administrators were not entitled to recover damages by reason of his death.

Action on the case brought, under the statute, by administrators and next of kin, to recover damages against defendants for killing the intestate on their railroad, through negligence and want of care.

The first count charged, in substance, that the defendants were owners of a certain railroad which was constructed upon and across a certain public highway (describing it), and owned a variety of cars and locomotives, propelled by steam, and used on said road. And that the said defendants so badly and negligently managed and used the said road, and the said cars then and there drawn and propelled over and

across the said public highway, that for the want of sufficient care, &c., the said locomotive and cars struck the wagon of the intestate, in which he was then riding, and ran upon and over his body where the railroad crossed the public highway, and where he lawfully was at the time; whereby the said intestate was killed.

The second count charged that the defendants' railroad was upon a level with the public road, where it crossed the same, and that the defendants neglected to provide proper watchmen and flagmen at the junction, to warn persons traveling lawfully on said public road, of the approach of said cars and locomotives of the defendants, and neglected to give proper warning and signal of the approach and passage of said cars, &c. And that they crossed the said public highway negligently with their cars, &c.; and without providing and maintaining gates or other barriers at the said intersection; and that the said intestate was passing along said public highway, in pursuit of his lawful business, and while crossing said track, was struck by said cars and locomotive, with great violence, and then and there killed.

" Whereby, and by force of the statute in such cases made and provided, an action hath accrued to the said plaintiffs, &c. And the plaintiffs aver that the said Cynthia Paxton is the widow of the said Richard Paxton, deceased, and is now surviving, and that John Paxton is the other next of kin, surviving, of the said Richard Paxton, deceased; whereby, and by means of the several premises, and the death of the said Richard Paxton, by means, and in the manner aforesaid, the said widow and next of kin of the said Richard Paxton, deceased, have sustained great loss and damage, and have been deprived of their support and maintenance, and of the care and protection of the said Richard Paxton, deceased; and, also, by means of the said premises, the said plaintiffs, who sue as administrators as aforesaid, have been and are greatly injured, to the damage of the said plaintiffs of ten thousand dollars, and therefore they bring suit," &c.

The defendants pleaded the general issue.

On the trial of the issue, at the Essex Circuit, the jury rendered a verdict for the plaintiffs, and assessed the damages at two thousand dollars.

A rule to show cause why the verdict should not be set aside, was afterwards applied for, on the ground that, according to the evidence, the death of the intestate was not occasioned by the negligence of the defendants' agents, and that the negligence of the deceased contributed to the result.

The rule was granted, and argued before the CHIEF JUSTICE, and Justices ELMER, BEDLE, and WOODHULL.

For the rule, *C. Parker.*

Contra, *T. N. McCarter.*

The opinion of the court was delivered by

ELMER, J. This was an action, brought by the administrators of Richard Paxton, deceased, in pursuance of the statute, to recover damages, for causing his death, by striking him with one of the defendants' engines, at the crossing of their railroad over the Newark and New York turnpike road, in October, 1865. Their right to recover, depended upon two questions, which were submitted to the jury, and determined by them in favor of the plaintiffs. The first was, whether the death was occasioned by the negligence of the defendants' agents; and the second, whether the negligence of the deceased contributed to produce the result. If the jury in deciding either of these questions, were so clearly wrong as to make it the duty of the court to interfere, the defendants are entitled to a new trial.

I am by no means satisfied that the verdict was right upon the first question; but, however that may be, I am so entirely satisfied that the culpable negligence of the deceased contributed to produce the unfortunate result, that I

think we are bound to set aside the verdict, for that reason, and do not think it necessary to examine the facts detailed in evidence, to show the negligence of the defendants.

It appears that the deceased drove a three horse team, attached to a truck loaded with paper, and on his way to New York, by the usual turnpike road, had occasion to cross the railroad of defendants, on the morning of a very foggy day. According to the testimony of a Mr. Farnsworth, who drove a light carriage, with, as he says, a very lively team, both teams stopped near the place where the railroad crosses the turnpike at a very acute angle. No engine or cars could be seen, but they were distinctly heard by Farnsworth and others, and were accustomed to pass at that time. Farnsworth sent a man who was riding with him, to the crossing, who reported that he could not see anything. Farnsworth says he spoke to deceased, and asked him if he thought he could get across ; he said yes, we'll take the risk. Farnsworth whipped his horses across the track, and got over safely. The deceased attempted to follow, but was struck and killed with two of his horses.

There seems to be no good reason for doubting the veracity or the accuracy of Farnsworth ; but the case does not turn on his unsupported testimony. It is evident from all the testimony on both sides, that the deceased was accustomed to travel over the road, knew the time the trains usually passed, and must have heard one approaching, as others did. If, as suggested in argument, he could not certainly determine whether the train he heard was on the road he was about to cross, or on another not far off, he was sufficiently apprised of probable danger, to require him to wait until he could be more sure that he did not endanger his own life, and the lives of others. A very short delay would have avoided the catastrophe. Instead of pausing, as under the circumstances it was his duty to do, incited, probably by the example of Farnsworth, or for other reasons, needlessly impatient, he rashly drove his loaded wagon, at a necessarily

slow gait upon the track, and lost his life. Farnsworth was criminally rash; but the deceased was far more so.

While it is important for courts and juries to be scrupulously careful to exact of the officers and agents of railroad companies, the greatest care to avoid danger to the lives or property of our citizens, it is equally important to require of citizens the same care to avoid, by their acts, endangering the lives of those traveling in the cars. As is well remarked by Justice Potts in the case of *Runyon* v. *The Central Railroad Company*, 1 *Dutcher* 558, "the necessities of railroad travel demand a speed at which it is impossible to stop in time to prevent a collision, if persons traveling on the highways, rush carelessly or recklessly upon a crossing ahead of an approaching train : and every collision of the kind places not only the party driving on the track, but the passengers in a train of cars in imminent peril, many times occasions great loss of life. Persons approaching a crossing in vehicles of their own, must use their eyes and ears, and exercise common care and prudence to avoid a collision, commensurate with the danger." These principles were applied by this court to the case of *Telfair* v. *Northern Railroad Company*, 1 *Vroom* 189, and are quite as applicable to this.

The verdict must be set aside, and a new trial ordered.